# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
October 19, 2010 Session

## STATE OF TENNESSEE v. WAYNE LAMAR DONALDSON, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2849     Cheryl Blackburn, Judge**

_____

**No. M2010-00690-CCA-R3-CD - Filed September 15, 2011**

_____

In an indictment returned by the Davidson County Grand Jury, Defendant Wayne Lamar Donaldson, Jr., was charged with possession of, with intent to sell or deliver, twenty-six grams or more of a substance containing cocaine within a drug-free school zone. The drugs were seized after a traffic violation stop of Defendant by an officer of the Metropolitan Davidson County Police Department. Defendant filed a motion to suppress all evidence seized during the stop. Following an evidentiary hearing, the trial court entered an order which granted the motion, and subsequently entered an order dismissing the indictment based upon the State's acknowledgment that it could not proceed to trial without the evidence. The State has appealed. Based upon the finding of facts made by the trial court and the application of the law to those facts, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. DAVID H. WELLES, SP.J., not participating.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellant, the State of Tennessee.

James Bryan Lewis, Nashville, Tennessee, for the appellee, Wayne Lamar Donaldson, Jr.

# OPINION

## *Factual Background and Trial Court's Ruling*

Officer Joshua Baker testified that he was on routine patrol on Gallatin Road shortly after midnight on the night of March 20, 2009, when he observed Defendant's vehicle go past the white line on Gallatin Road at the intersection with Old Hickory Boulevard. The traffic light was red for the Defendant's vehicle, which was in the "right turn only" lane. Defendant turned right onto Old Hickory Boulevard without giving a turn signal. Officer Baker was directly behind Defendant on Gallatin Road when Defendant turned onto Old Hickory Boulevard. Based upon Officer Baker's conclusion that Defendant had violated traffic ordinances of Metropolitan Davidson County, he turned on his blue lights after following Defendant on to Old Hickory Boulevard. Defendant promptly pulled into a Wal-Mart parking lot and stopped.

Defendant was the only person in his vehicle, and he remained seated in the driver's seat. Officer Baker approached Defendant's vehicle and engaged in conversation with Defendant while waiting to receive Defendant's driver's license and vehicle registration. Once receiving those items, Officer Baker returned to his patrol car and did a records check, obtained a criminal history of Defendant, and wrote up citations for Defendant for failure to properly stop prior to a turn and failure to use a turn signal. Defendant remained inside his own vehicle. Officer Baker testified that he learned from the criminal history that Defendant "had some DUI's, and I think he [Defendant] had some [drug possession] with intent charges." However, there were no active warrants for the arrest of Defendant.

Officer Baker completed his work inside the patrol car and returned to Defendant's vehicle with the citations and Defendant's driver's license (and though not mentioned, presumably the vehicle registration). He promptly asked Defendant to get out of his vehicle because,

> I wanted to get a feel for him [Defendant]. It's common that I ask people to get out of their vehicles to see their demeanor, see how they're acting. I wanted to see if maybe he had been drinking to get a perspective of him.

Officer Baker added that he was also going to give the citations to Defendant. After Defendant stepped outside of his vehicle, Officer Baker looked down to the driver's side floorboard and saw "a clear plastic bag with a white powder substance, which is commonly powder cocaine." This substance was in fact the cocaine which led to Defendant's indictment.

During cross-examination, Officer Baker admitted that prior to having Defendant get out of his vehicle, he did not detect an odor of alcohol on Defendant's breath, and in fact had no reason at all to believe that Defendant had been driving impaired. Officer Baker had no suspicions that Defendant had any weapons or illegal drugs prior to Defendant exiting his vehicle. Officer Baker agreed that he was back at his patrol car for approximately five minutes before returning to Defendant's vehicle. Officer Baker, when cross-examined about the sequence of events surrounding when he was going to give Defendant the citations, testified, "[w]hen I went back up to the vehicle to ask him [Defendant] to step out, part of that was to speak with him and get him to sign the ticket." Officer Baker, upon further specific cross-examination as to why he required Defendant to get out of the vehicle despite having no suspicions of Defendant being under the influence of intoxicants, of being armed, or of possessing illegal drugs, testified,

A.  It's common practice to have people step out of the vehicle to sign their citations.

Q.  Okay.

A.  It's at least my common practice as well as I also get - - I just - - I observe people, I ask them to step out, I talk to them. I normally have conversations with them out of the vehicle.

\* \* \*

Q.  But you stated you had him step out of the vehicle to observe him further; is that correct?

A.  True.

Q.  Why would you want to observe him further when you had no suspicion that he was armed, dangerous, or had any drugs on him? Why would you not just simply hand him the ticket inside the vehicle? ["][Defendant], sign it and you're on your way.["] Why would you not do that?

A.  Like I said, I normally have people step out of the vehicle. I judge their demeanor, I see how they're acting.

Q.  Why would you need to judge his demeanor at this point if you had saw nothing out of the ordinary?

-3-

A.      Just it was part of him getting out of - - part of him signing the citation
        as well.

Neither counsel for the State nor counsel for Defendant had any further questions of Officer Baker. In response to questions from the trial court, Officer Baker testified that he had returned to Defendant his driver's license when he stepped out of his vehicle. The officer also testified that he was in the process of handing the citations to Defendant when he saw the cocaine on the floorboard after Defendant stepped out of the vehicle. There was no further testimony at the hearing.

The trial court took the matter under advisement and subsequently filed an order granting the motion to suppress the cocaine as evidence. Defendant's motion to suppress challenged the initial stop as well as his assertion that the detention was unconstitutionally extended by having Defendant exit his vehicle. In this appeal by the State, Defendant does not challenge the trial court's determination that the initial stop was constitutionally based upon reasonable grounds that Defendant had violated traffic ordinances.

In its order, the trial court concluded that while the initial traffic stop was valid, there was no basis for Officer Baker to have Defendant exit the vehicle or for Officer Baker to perform a search of the vehicle. Addressing one of the legal arguments raised by Defendant, the trial court recognized that the duration of a stop must be "temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983).

The trial court made the following factual findings. After writing the citations for the traffic offenses, Officer Baker returned to Defendant's vehicle and requested Defendant to step outside of the vehicle so that Officer Baker "could observe Defendant's demeanor and see if [Defendant] had been drinking." When Officer Baker initially spoke with Defendant he did not detect alcohol on Defendant's breath and had seen nothing to cause him to believe Defendant was impaired. Officer Baker had completed writing the traffic citations while inside his patrol car. Officer Baker gave an additional reason when asked why he had Defendant step out of his vehicle: he wanted to speak with Defendant. Officer Baker's practice was to have drivers step outside of the vehicle to sign a citation, allowing Officer Baker to observe the driver and his demeanor outside of the vehicle. Officer Baker did not observe the cocaine until Defendant stepped out of the vehicle. Officer Baker had returned the driver's license to Defendant and was in the process of handing the citations to Defendant when he observed the cocaine on the floorboard.

In its legal analysis, the trial court correctly concluded that the cocaine was in plain view after Defendant was required to exit the vehicle. The issue, as correctly stated by the

trial court, is whether Officer Baker had a basis to have Defendant step outside of his vehicle. While stating that "[a] police officer may, as a matter of course, ask a driver to exit his or her vehicle as part of a traffic stop," relying upon *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the trial court, as noted above, qualified reliance upon *Mimms* by the legal principle that traffic stop detentions may not last longer than is necessary for the purpose of the stop, relying upon *Florida v. Royer*, 460 U.S. 491 (1983).

The trial court concluded its findings of fact and conclusions of law in the order granting the motion to suppress by stating as follows:

> Here, Officer Baker testified that he approached Defendant's vehicle to give him the traffic citation and return Defendant's driver's license. Thus, for all intensive [sic] purposes, the traffic stop had concluded. *Officer Baker was unable to articulate any reason as to why further observation of Defendant was necessary in this case. The request for Defendant to exit the vehicle was not reasonably related to the stop.* Accordingly, the Court GRANTS Defendant's suppression motion. The evidence seized from Defendant's vehicle and person is deemed inadmissible. (emphasis added)

After receiving notice of the trial court's ruling that Defendant had prevailed on the motion to suppress, the State promptly filed with the trial court clerk a motion to reconsider, arguing first that it had not been given the opportunity in the trial court to argue its position on the legal issues presented. Our review of the transcript does not support this assertion by the State, and it is not raised by the State on appeal. The second ground for reconsideration was the State's assertion that the trial court's ruling was "contrary to established case law." The crux of the State's argument in the trial court in the motion to reconsider, and continuing on appeal, is that the traffic stop could not be completed until after Defendant had signed the traffic citations as required by law. *See* Tenn. Code Ann. § 55-10-207(b) (2008 Replc.) Furthermore, the State asserted in the trial court and also on appeal to the effect that *Mimms* gives a police officer *carte blanche* authority to require a driver to exit his vehicle at any time and for any reason before a valid traffic stop is legally concluded. In the motion to reconsider, the State argued,

> *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), stands for the proposition that an officer may, as a matter of course, ask that a driver step out of the vehicle during a traffic stop. This does not require the officer to state, on a case-by-case basis, that he was concerned for his safety. This is essentially a bright line rule permitting a minimal inconvenience to the driver. The Supreme Court concluded that the need for officer safety outweighed the benign nature of this intrusion.

The trial court entered an order denying the motion to reconsider. In it, the court reiterated that the justification for the traffic stop had concluded before Defendant stepped out of the vehicle - the officer had returned Defendant's driver's license to him and the citations had been completed and only required Defendant's signature. The trial court added that its ruling would have been different had Officer Baker not yet returned the driver's license to Defendant when he asked Defendant to exit the vehicle. The trial court also stated its finding that "Officer Baker's request for Defendant to exit the vehicle was not reasonably related in scope to the circumstances which justified [the] initial stop."

*Analysis*

In *State v. Brown*, 294 S.W.3d 553 (Tenn. 2009), our supreme court has stated the appropriate standard of review for this case:

> On appeal from the denial of a motion to suppress, we defer to the trial court's findings of fact unless the evidence in the record preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The "credibility of the witnesses, the weight and value of the evidence, and [the] resolution of conflicts in the evidence are matters entrusted to the trial [court] as the trier of fact." *Id.* The prevailing party in the trial court is afforded 'the strongest legitimate view of the evidence . . . as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id.*

*Brown*, 294 S.W.3d at 561.

Also, in *Brown*, we find the applicable law we must follow in disposing of the State's appeal from the trial court's grant of Defendant's motion to suppress:

> Both the federal and state constitutions protect against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, section 7 of the Tennessee Constitution similarly guarantees "[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." "[U]nder both the federal constitution and our state constitution, a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the state demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement." *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005).

* * *

When the police have probable cause to believe that a traffic violation has occurred, the temporary detention of an individual during the stop of the vehicle is considered constitutionally reasonable, irrespective of the subjective motivations of the officer making the stop. *Shren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). The proper inquiry is whether, during the detention, the officer diligently pursued a means of investigation that was likely to confirm or dispel suspicion quickly. *State v. Simpson*, 968 S.W.2d 776, 783 (Tenn. 1998). A reasonable traffic stop can become unreasonable "'if the time, manner or scope of the investigation exceeds the proper parameters.'" *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002) (quoting *United States v. Childs*, 256 F.3d 559, 564 (7th Cir. 2001)).

*Brown*, 294 S.W.3d at 561-62.

As noted above, it appears the State has continued to maintain, as it did at the trial court level, that *Mimms* for all practical purposes grants law enforcement officers *carte blanche* authority to remove a person from his or her vehicle at any time, and for any reason, prior to the conclusion of a traffic stop; further the State insists that a valid traffic stop can never end, whenever issuance of a traffic citation is authorized, until such time as the driver has signed the traffic citation. In essence, the State asserts that a request for a driver to get out of the vehicle, referred to as a "*Mimms* request," is virtually unassailable as long as the officer has withheld the driver's ability to finish the tenure of the traffic stop.

We deem it necessary to quote verbatim from the State's brief the passages which support our understanding of the State's argument:

It is well-settled that a police officer may ask a driver to get out of his vehicle as a legitimate part of **any** traffic stop and that a traffic stop is not concluded until a citation is issued. (emphasis added) State's brief, p. 9

Our Supreme Court has also recognized that **no constitutional violations occur** when a police officer asks a driver to get out of his car during a traffic stop . . . . And this Court [the Court of Criminal Appeals] has followed suit. (emphasis added) (citations omitted) State's brief, p. 10.

. . . it was constitutionally permissible for Officer Baker to ask the defendant to get out of his car. At the time of the request, **the traffic stop was still in**

-7-

**progress because the defendant had not signed the citation and Officer Baker had not issued it**. (emphasis added) State's brief, p. 11.

In [suppressing the evidence] the trial court made several errors. First, the court defined the issue as "whether the officer had a basis to request Defendant to step out of the vehicle" or, alternatively, "whether the conduct of the police officer was reasonable considering the totality of the circumstances." [record citation omitted]. However, **other than the fact** of [sic] **that a traffic stop was in progress,** Officer Baker **did not need a reason to ask the defendant to step out of his car.** As previously demonstrated, the United States Supreme Court, our state Supreme Court, and [the Court of Criminal Appeals] have held that a police officer may ask a driver to step from his car as a legitimate part of **any** traffic stop and doing so does **not** give rise to **any constitutional concerns**. (emphasis added) State's brief, p. 11-12.

Consequently, the **only basis** a police officer needs to make [a *Mimms*] request is that the [*Mimms*] request [to get out of the vehicle] be **part of a valid traffic stop**. (emphasis added) State's brief, p. 12.

Finally, the [*Mimms*] request does not unreasonably expand the scope of the stop. Any additional investigation occasioned by the request is **incidental to the request, the objective reasonablness of which is beyond question**. (emphasis added) State's brief, pp. 13-14.

In addition to arguing the broad permissibility of, and authority for, allowing a *Mimms* request, the State, as indicated above, asserts that the trial court erroneously framed the issue and erroneously concluded that the traffic stop ended when Officer Baker returned the driver's license to Defendant. The State argues that case law supports its assertion that a traffic stop ceases to be a seizure *only* after the officer issues "a traffic citation or warning **and** returns a driver's license and registration." *State v. McCrary*, 45 S.W.3d 36, 42 (Tenn. Crim. App. 2000). However, the holding in that case was not a list of the requirements necessary for a traffic stop to conclude. Instead, the issue in *McCrary*, and in the case it relied upon, *State v. Ashworth*, 3 S.W.3d 25, 29-30 (Tenn. Crim. App. 1999), was whether a valid stop had ended such that the continued encounter between the law enforcement officer and the driver transformed to a *consensual* encounter and allowed what otherwise might be improper comments, i.e., requests for consent to search, etc., to be constitutionally proper. "When a traffic stop ceases to be a detention and the driver voluntarily consents to additional questioning, no further seizure occurs." *Ashworth*, 3 S.W.3d at 30. Consequently, we do not agree with the State that *McCrary* and *Ashworth* hold that the legitimacy of a traffic stop for United States and Tennessee Constitutional purposes in all

-8-

cases *never* stops until: the driver's license and the vehicle's registration have been returned to the driver *and* the traffic citation (if applicable) has been signed by the driver to complete the process of issuance of the citation.

We will now address the cases relied upon by the State to support its argument that the *Mimms* request in this case did not violate Defendant's constitutional rights. The analysis will begin with *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330 (1977). In *Mimms*, the defendant was pulled over by two Philadelphia police officers because the vehicle he was driving had an expired license plate. One of the officers asked the defendant at the beginning of the "stop" to step out of the car and produce his "owner's card" and his driver's license. When the defendant complied, the officer noticed a bulge under the defendant's sports jacket; the officer frisked the defendant because he feared the bulge might be a weapon. This resulted in the discovery of a .38 caliber revolver in the defendant's waistband.

As a result of his arrest at the scene for carrying a concealed deadly weapon and for unlawfully carrying a firearm without a license, the defendant was ultimately indicted for the same offenses. He filed a motion to suppress the revolver from evidence, which was denied. Following a trial, he was convicted of both charges. The Supreme Court of Pennsylvania reversed the conviction, holding that the revolver should have been suppressed because it was seized in violation of the guarantees of the Fourth and Fourteenth Amendments to the United States Constitution. According to the United States Supreme Court's opinion, the high court in Pennsylvania concluded the initial stop of the defendant's car was proper, and the frisk for a weapon was proper once a bulge was detected when the defendant was outside the vehicle. However, the Pennsylvania Court felt that the search was still "constitutionally infirm because the officer's order to [the defendant] to get out of the car was an impermissible 'seizure.'" *Mimms*, 434 U.S. at 108, 98 S.Ct. at 332. The basis for the Pennsylvania high court's ruling was that "the officer could not point to 'objective observable facts to support a suspicion that criminal activity was afoot or that the occupants of the vehicle posed a threat to police safety.'" *Id*. (citing *Mimms*, 471 Pa. 546, 552, 370 A.2d 1157, 1160 (1977)).

The United States Supreme Court granted the petition for certiorari brought by the Commonwealth of Pennsylvania, and in a per curiam opinion the majority reversed the judgment of the Pennsylvania Supreme Court. As mentioned above, the *Mimms* court noted that the police officer approached the defendant's vehicle first thing and asked the defendant to step from the vehicle at the same time as he was asking the defendant to produce his driver's license and "owner's card." The *Mimms* court stated that "[i]t was apparently [the officer's] practice to order all drivers out of their vehicles as a matter of course whenever they had been stopped for a traffic violation." *Mimms*, 434 U.S. at 110. The justification

given by the State's attorney for this policy was because the "precautionary measure" afforded "a degree of protection to the officer." *Id.*

Agreeing with the State's argument, the United States Supreme Court stated,

We think it too plain for argument that the State's **proffered justification – the safety of the officer** – is both legitimate and weighty.

\* \* \*

The police have already lawfully decided that the driver shall be briefly detained; the only question is **whether he shall spend that period sitting in the driver's seat of his car or standing alongside it**.

\* \* \*

What is at most a mere inconvenience cannot prevail when **balanced against legitimate concerns for the officer's safety**.

*Id.* at 110-11 (emphasis added).

What is clear from the facts in *Mimms* is that the officer had the defendant get out of his car immediately as the officer was requiring the defendant to hand over his driver's license and his owner's card, and was doing this for the officer's safety and protection, and for no other apparent reason. Furthermore, it is clear that the Supreme Court in *Mimms* reached its holding on the basis of balancing the act of ordering the driver out of the car (under the stated circumstances) against *legitimate* concerns for officer safety. In footnote 6 of the *Mimms* decision the Court made this comment:

Contrary to the suggestion in the dissent of our Brother STEVENS [sic], *post*, [98 S.Ct.] at [339], we do not hold today that "whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car." We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.

*Mimms*, 434 U.S. at 111, n. 6.

The first sentence of footnote 6 in *Mimms* supports our conclusion that the Supreme Court did not intend for officers to have *carte blanche* authority to *always* order drivers out

-10-

of their vehicles under any and all circumstances. In light of the facts of *Mimms*, and the Supreme Court's corresponding emphasis upon officer safety in the text of the opinion, we conclude that the second sentence in footnote 6 explains that an officer's order to a driver in a traffic stop, to exit his or her vehicle, is not always a violation of the Fourth Amendment's protection against unreasonable searches and seizures.

The State in the case *sub judice* argues that the trial court erred by relying upon the United States Supreme Court's decision in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319 (1983), an opinion filed about five years after *Mimms*. The State acknowledges that *Royer* holds that traffic stops must be "temporary and last no longer than necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325. The State asserts that rather than being "countervailing rules of law" as construed by the trial court, "a *Mimms* request falls squarely within the parameters established by *Royer*."

In *State v. Berrios*, 235 S.W.3d 99 (Tenn. 2007), (also relied upon by the State in its brief) our state supreme court acknowledged *Mimms* by stating it held "that an officer may, as a matter of course, ask that a driver step out of the vehicle during a traffic stop." *Id*. at 106. However, in *Berrios*, the officer went beyond the extent necessary to effectuate the *purposes* of the stop, and our supreme court reiterated its earlier holding in *State v. Cox*, 171 S.W.3d 174 (Tenn. 2005) and quoted from *Cox*'s adoption of the rationale in *Royer*:

> The duration of [a traffic] stop, however, must be "temporary and last no longer than necessary to effectuate the purpose of the stop." "The proper inquiry is whether during the detention the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." A traffic stop may be deemed "unreasonable," if the "'time, manner or scope of the investigation exceeds the proper parameters.'"
>
> *Id*. at 179-80 (citations omitted).

*Berrios*, 235 S.W.3d at 106-07.

Accordingly, we disagree with the implication in the State's brief that a *Mimms* request will always fall within the *Royer* dictates and never violate the parameters established by *Royer*. In another case relied on by the State, *State v. Hanning*, 296 S.W.3d 44 (Tenn. 2009), the issue was whether the police officer had sufficient information based only upon an anonymous tip of a recklessly driven semi-truck on the interstate, plus corroborating information he observed, in order to initiate an investigatory stop of a semi-truck parked in the emergency lane of the northbound exit from the interstate. *Id*. at 46. In that case the

-11-

propriety of the officer ordering the driver of the semi-truck to exit the vehicle immediately was not an issue.

The Supreme Court stated,

Having justifiably detained [the defendant] based upon reasonable suspicion of criminal activity, [the officer] approached the door of the truck where he . . . properly asked [the defendant] to step from the truck. *See State v. Berrios*, 235 S.W.3d 99, 106 (Tenn. 2007) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (holding that once a vehicle has been lawfully detained, an officer may, as a matter of course, order the driver to step out of the vehicle.)) Thereafter, [the officer] properly administered field sobriety tests, establishing probable cause to arrest [the defendant] for driving under the influence.

*Hanning*, 296 S.W.3d at 54.

We note that the officer in *Hanning* immediately ordered the driver from the semi-truck upon detaining the truck, with use of the blue lights of his patrol car, which was parked close to the front of the semi-truck. *Id*. at 46-47. After asking if the defendant "had been drinking," the officer administered various field sobriety tests, which implicitly could only be administered *outside of the vehicle*.

In *State v. Brown*, 294 S.W.3d 553 (Tenn. 2009), our Supreme Court cited with approval *Berrios* quoting *Mimms* for the proposition that an order for a driver to exit a vehicle can only be described as a "de minimus" intrusion or a "mere inconvenience." *Brown*, 294 S.W.3d at 562. Again, however, in *Brown* the issue was not the officer's order for the driver to step from the vehicle. The issues were whether the detention exceeded the scope of the traffic stop because the officer immediately began searching the vehicle for illegal drugs at the beginning of the traffic stop; whether the defendant gave a valid consent to search the vehicle; and whether the search exceeded the scope of the consent, if valid. *Id*. at 557, 562-65. In *Brown*, the Court held that the time, manner, and scope of the officer's investigation did not exceed the parameters of the traffic stop. *Id*. at 562. The trial court in the case *sub judice* reached the opposite conclusion in Defendant's case.

In *State v. Harris*, 280 S.W.3d 832 (Tenn. Crim. App. 2008), the defendant was driving with one passenger when a police officer stopped him for violation of the seat belt law. The officer approached the defendant and asked him to produce his car registration and insurance documents, which the defendant replied he did not have in his possession. Thus, there were three citations for traffic violations which needed to be issued. The officer then

asked the defendant to go ahead and exit his vehicle "so the officer could 'issue citations for seat belt, registration and insurance'" violations. *Id.*, 280 S.W.3d at 837. A pat down search for weapons yielded no weapons or contraband. While another office who soon arrived on the scene completed writing out the citations, the first officer walked around the defendant's vehicle with a drug sniffing dog. The dog "hit" on the passenger side door. The first officer then did a more thorough search of the defendant's person and found a seven-gram rock of cocaine in the defendant's crotch area. In summary, the defendant's issues on appeal were (1) whether the search and seizure exceeded the scope of the traffic stop; (2) the validity of the initial stop; and (3) whether the "hit" by the canine on the passenger door justified the second search of the defendant's person. *Id.*, 280 S.W.3d at 838. From the opinion, we glean that the only relevance of removal of the defendant from his vehicle as to any issue on appeal was whether, *in that case*, the removal improperly extended the legitimate time and scope of a traffic stop. Our court summarized the consideration of this factor as follows:

> The next event of possible constitutional significance is the officer's requesting the defendant to stand outside his car while the officer wrote the citations for the seatbelt, registration, and financial responsibility violations. Although this action arguably exacerbated the seizure in progress, we agree with the trial court that the officer's habit of having motorists exit their vehicles during the completion of paperwork was a justifiable safety measure, especially in view of the benign nature of the intrusion. *See Pennsylvania v. Mimms*, 434 U.S. 106, 109-11, 98 S.Ct. 330, 332-33, 54 L.Ed.2d 331 (1977) (holding that an officer may, as a matter of course, ask that a driver step out of the vehicle during a traffic stop); *State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993) ("'The reasonableness of a stop turns on the facts and circumstances of each case [including] . . . the nature and scope of the intrusion'") (quoting *United States v. Mendenhall*, 446 U.S. 544, 561, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980) (Powell, J., concurring));

> * * *

> While focused on his paperwork, an officer is especially vulnerable to the seclusion and procurement of a weapon by a detainee who is sitting inside a vehicle.

*Harris*, 280 S.W.3d at 840.

We note three things from *Harris* which distinguish it from the case *sub judice*. First, the trial court in *Harris* made a factual finding that the officer's habit of having a motorist, as the defendant there, get out of the vehicle during *completion* of the paperwork was a

-13-

justifiable safety measure. The trial court in the case *sub judice* did not make such a finding. Next, the officer had the defendant in *Harris* exit the vehicle early in the encounter, and clearly solely for furtherance of the issuance of citations in that case, and finally, the process of doing the paperwork by the officer in *Harris* had not even started when he ordered the defendant out of his car. In the case *sub judice*, the officer had fully completed his portion of the paperwork. Concerns of safety from the fact that Officer Baker would be distracted from Defendant sitting in his car, while Officer Baker was filling out paperwork while standing next to Defendant's car, did not exist as in the situation in *Harris*.

In the case *sub judice* the trial court heard the testimony of the sole witness who testified and observed his demeanor. Implicitly, if not also explicitly, the trial court made credibility determinations that the officer's explanation for having Defendant get out of the car for safety reasons at the end of the traffic stop was not credible. The trial court factually found that the legitimate purpose of the traffic stop had ended before Defendant was ordered to exit the vehicle for the purpose of the officer to talk to Defendant and further observe Defendant's demeanor outside of the vehicle. The trial court concluded that the officer had no appropriate grounds to extend the seizure of Defendant at the time he was ordered to get out of his car. We are bound in this case, under the applicable law cited above, by the trial court's credibility determinations, *and* the weight and value placed on the evidence, unless the evidence preponderates against the trial court's determination. *Brown*, 294 S.W.3d at 561. In the case the record does not preponderate against the findings of the trial court. The State is not entitled to relief in this appeal.

## CONCLUSION

After review of the entire record and briefs of the parties, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-14-