IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 21, 2011 Session

## STATE OF TENNESSEE v. ERYK N. CARRASCO AND LUIS PRIETO

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2010-CR-179A    Robert E. Burch, Judge**

---

**No. M2010-02359-CCA-R3-CD - Filed November 10, 2011**

---

The Defendants, Eryk N. Carrasco and Luis Prieto, pled guilty as Range I offenders to possession with intent to deliver less than 0.5 gram of cocaine, a Class C felony. See T.C.A. §§ 39-17-417(a), (c)(2)(A) (2010). Each defendant was sentenced to serve four years. The Defendants' plea agreements reserved a certified question of law regarding the legality of the traffic stop that led to their arrests. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Eryk N. Carrasco; and Olin J. Baker, Charlotte, Tennessee, for the appellant, Luis Prieto.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Dan Alsobrooks, District Attorney General; and Sarah Wojnarowski, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a traffic stop during which cocaine was discovered concealed in a compartment of a truck. The Defendants were arrested for possessing twenty-six grams or more of cocaine. After they were indicted, Defendant Carrasco filed a motion to suppress, adopted by Defendant Prieto, alleging that the traffic stop that led to his arrest was illegal, that he was detained longer than was necessary to effectuate the purpose of the stop, and that the evidence seized should be suppressed as "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 488 (1963).

At the suppression hearing, Twenty-Fourth Judicial Task Force Agent Jeremy Long testified that he was sitting in an interstate median near mile marker 169 on March 29, 2010, when he saw a white Dodge Durango pass. He said the driver "appeared [to have] laid back to hide that he wasn't wearing a seatbelt." He said he was unable to follow the truck immediately due to traffic. He said that once he was able to pull into traffic, he followed the truck and saw it "go over both lines twice." He said that once he was able to catch up to the truck, he activated his car's emergency equipment and stopped the truck around mile marker 174.

Agent Long testified that he approached the truck on the passenger side. He identified Defendant Prieto as the driver and Defendant Carrasco as the passenger. He said he smelled marijuana when Carrasco rolled down the window. Agent Long said that Prieto provided his driver's license and that Carrasco said the truck was his but did not know where the truck's documents were. Agent Long said that he could not hear Prieto over traffic and that he asked Prieto to step to the rear of the truck. He said Prieto stated that they were driving to a casino in Ohio.

Agent Long testified that he returned to speak with Carrasco. He said Carrasco was unable to provide any state-issued identification or the truck's documents. Agent Long said that Carrasco claimed they were traveling to Chicago to see his uncle.

Agent Long testified that about one and one-half to two minutes after the stop began, Agent Jason Miller arrived. He said that he asked Carrasco to leave the truck and that he asked Agent Miller to have a drug dog circle the truck. He said the drug dog "alerted" on the driver's side. He said that he thought Carrasco "tr[ied] to stall" when he asked for permission to search the truck and that he advised Carrasco they were going to search the truck based upon the odor of marijuana and the drug dog's alert.

Agent Long testified that they found marijuana residue in the center console, marijuana "shake" in the front floorboard, and a brown bag containing a clear bag of a white substance behind a loose portion of the center console. He said a field test identified the white substance as cocaine, which was later confirmed by a lab test. He said the cocaine weighed 3.93 ounces.

The record reflects that during Agent Long's testimony, the State played a video recording of the stop. The video recording has not been included in the appellate record.

On cross-examination, Agent Long acknowledged that the search was neither by consent nor incident to an arrest. He denied knowing that the truck's driver was Hispanic when he began following the truck or noticing the truck's Texas license plate. He said that

when he began the pursuit, he planned to stop the truck based upon the driver's seatbelt violation, provided he could confirm the violation. He said he followed the truck from a distance of four to five car lengths but was unable to see whether the driver was wearing a seatbelt. He did not recall the truck speeding. He said that the truck moved from the left lane to the right lane and that he stayed in the left lane until he caught up with the truck. He said that as he caught up to the truck's back bumper, he could see the driver was wearing a seatbelt. He said that at this point, the driver "started hitting both lines going over both lines twice." He denied being trained to position himself in a driver's blind spot to force the driver to weave. He said that during the pursuit, he contacted Agent Miller and inquired whether the agent could see if the truck's driver was wearing a seatbelt but that Agent Miller could not tell. He denied that he asked Agent Miller to join the pursuit at that point. He said that he told Agent Miller about the marijuana smell after Agent Miller arrived at the scene of the stop and that he asked the agent to circle the truck with his drug dog.

Agent Long testified that he smelled raw, not burned, marijuana as soon as the passenger rolled down the window. He said he asked Defendant Carrasco to roll up the window in order to keep the odor from dissipating and to keep the drug dog from jumping into the truck. He said he issued a warning ticket to Defendant Prieto for "failure to maintain" but did not cite him for any traffic violation. He acknowledged his testimony at the preliminary hearing that he caught up with the truck at exit 171 and he agreed that at this point, he knew the truck had a Texas license tag. He agreed that it was possible he was in the truck's blind spot and that a person who was about to change lanes might begin to go into the other lane, see a car in the blind spot, and drive back into the original lane. He agreed it was possible Mr. Prieto was attempting to change lanes but said he did not see a turn signal. He said he was around mile marker 173 when he saw the driver was wearing a seatbelt and when the truck drifted in the lane. He said the driver "went over both lines once" and acknowledged that he did not see any erratic driving before this point. He agreed that a nervous driver or one who was watching in the mirrors might drift in the lane.

Agent Long testified that before he made the stop, he was concerned that Defendant Prieto might have been falling asleep or driving under the influence. He acknowledged that he did not conduct any field sobriety tests. He did not know the speed at which he and the Defendants were traveling between mile markers 173 and 174, although he identified the speed limit as sixty miles per hour and said that other cars were passing them.

On redirect examination, Agent Long testified that Defendant Prieto admitted on the video recording that he crossed the lines. He recalled Defendant Prieto's statement that Prieto had been driving "for quite a while." He agreed that the truck was out of his sight between mile markers 169 and 171 and that it was possible the marijuana was disposed of during this time. On recross-examination, Agent Long testified that he did not know of

anyone finding marijuana along that stretch of the interstate. He said the marijuana "shake" from the floorboard was not collected as evidence. On further redirect examination, Agent Long testified that he received information from a jailer that Defendant Carrasco told another inmate "that if any of his family wanted to go find the marijuana that they could have the contents of the marijuana and/or bag." He said that before he received this information, drug agents saw two women and a gray van on the side of the interstate. On further recross-examination, Agent Long testified that the jailer received the information by monitoring the other inmate's telephone calls.

Agent Jason Miller of the Twenty-Third Judicial District Drug Task Force testified that on March 29, 2010, he came upon Agent Long's stop of the Defendants. He said Agent Long reported a strong marijuana smell and asked him to walk his drug dog around the truck. Agent Miller said that the dog alerted on the driver's side door and that he and Agent Long searched the truck and found crack cocaine. He said he also found some green plant material that he thought was marijuana. He said there was a strong marijuana odor inside and toward the back of the truck. Agent Miller narrated the video recording of the stop, which was replayed for the court. He identified his dog alerting at the side of the truck.

When asked on cross-examination why the drug dog did not alert at the back of the truck's passenger compartment where he noticed the strong marijuana odor, Agent Miller testified, "There's many factors that come into play." He said these factors included wind direction and the odor traveling to the point of least resistance. He acknowledged that his dog had falsely alerted once or twice. He said that he had searched cars and not found drugs but that the occupants would later report that they used or had narcotics in the car earlier. He agreed the dog detected the odor of drugs, rather than the presence of drugs.

On redirect examination, Agent Miller estimated that his dog had alerted over one hundred times to the odor of drugs. He said that depending on the amount of drugs in a car, the odor might remain for one to two days.

The trial court denied the Defendant's motion to suppress. The trial court found:

> The stop was proper. The vehicle can cross the line many times in one mile. The Agent testified that they had crossed the line several times. Once or twice happens but several times – now it may not – it is debatable as to whether it might be a traffic offense or not; but it certainly is cause to have the officer stop the vehicle and inquire as to the alertness of the driver.

-4-

If it was in fact as defense says that the agent was driving in his blind spot then not only was the driver crossing the line and so forth, he was actually endangering another vehicle which gives him all the more reason to stop.

As far as calling him up and so forth, what I heard was that he called him when he was – he said he was at 174 which means . . . he was already stopped because he was stopped at 174. And I can understand the officers remembering it differently in minor details. I don't have a problem with that. As a matter of fact, to me, that gives it the ring of truth. If both officers testified one, two, three, four right down the line exactly the same they've rehearsed; and this was obviously not rehearsed.

Obviously the smell of marijuana gave, if not probable cause to search, at least cause to detain and call the drug dog. The drug dog alerted, that give probable cause and the drugs were found in the vehicle.

Defendant Carrasco pled guilty to possession of less than one-half gram of cocaine with intent to deliver. Defendant Prieto entered a no contest plea to possession of less than one-half gram of cocaine with intent to deliver. Both defendants entered their pleas with the understanding that they were reserving a certified question of law regarding the legality of the stop.

Initially, the State contends that the Defendant has failed to comply with the prerequisites for appellate review of a certified question of law. The State argues that neither Defendant has properly stated his certified question with sufficient specificity. The Defendants have not addressed the issue.

Defendant Carrasco's certified question is stated:

Whether the initial stop of the Defendant's vehicle was based on a reasonable suspicion supported by specific and articulable facts or for a traffic law violation.

Defendant Prieto's certified question is stated:

> Whether the initial stop of the Defendant's vehicle was based on reasonable suspicion supported by specific and articulable facts or for a traffic violation, and whether the stop was pretextually designed to effectuate a warrantless search and seizure of the defendant and defendant's vehicle.

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from a plea of guilty if the defendant enters into a plea agreement but explicitly reserves with consent of the State and the trial court a certified question of law that is dispositive of the case. The Rule provides:

> (b) When an Appeal Lies.- The defendant or the state may appeal any order or judgment in a criminal proceeding when the law provides for such appeal. The defendant may appeal from any judgment of conviction:
>
> . . .
>
> (2) on a plea of guilty or nolo contendere, if:
>
> (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved-with the consent of the state and of the court-the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

See Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv) (2010) (amended 2011).

The State argues that the Defendants' questions are too broad and should not be addressed because they do not meet the requirements for a properly reserved certified question of law. This argument implicates subsection (ii) of Rule 37(b)(2)(A). Our supreme court has said:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case.

State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988) (emphasis added).

In the present case, the Defendants' questions challenge whether there were specific and articulable facts constituting reasonable suspicion for the traffic stop. The questions

posed allow a meaningful determination of whether the issue is dispositive. See Tenn. R. Crim. P. 37(b)(2)(A)(ii), (iv). If there was reasonable suspicion, the trial court correctly denied the motion to suppress. If there was not reasonable suspicion, the evidence obtained in the traffic stop should have been suppressed, leaving the State without proof that the Defendants possessed cocaine with the intent to deliver. We hold that the Defendants' certified questions meet the specificity requirements of Rule 37 and Preston and allow this court to determine that the questions are dispositive. We also conclude that the Defendants' questions were stated in the judgment and properly reserved with the consent of the State and the trial court. See Tenn. R. Crim. P. 37(b)(2)(A)(i), (iii).

Relative to the issue presented, a trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts as determined by the trial court is a question of law, which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 423 S.W.2d 857, 860 (1968)). The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. See Katz v. United States, 389 U.S. 347, 357 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the State establishes that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

An exception to the warrant requirement exists when a police officer conducts an investigatory stop based on a reasonable suspicion that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); Binette, 33 S.W.3d at 218. Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]" Binette, 33 S.W.3d at 218 (citing Ornelas v. United States, 517

U.S. 690, 696 (1996)). Reasonable suspicion is determined based upon the totality of the circumstances of the encounter. Binette, 33 S.W.3d at 218 (citing Alabama v. White, 496 U.S. 325, 330 (1990)). The police may stop a vehicle if they have either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. See Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention. See Whren v. United States, 517 U.S. 806, 813 (1996); State v. Vineyard, 958 S.W.2d 730, 731 (Tenn. 1997).

When a traffic stop is initiated based on probable cause or reasonable suspicion, a resulting investigation is reviewed under the framework established in Terry v. Ohio. See United States v. Brignoni-Ponce, 422 U.S. 873 (1975). Such investigations require that an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983); See State v. England, 19 S.W.3d 762, 767-68 (Tenn. 2000). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Royer, 460 U.S. at 500. "[T]he proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998) (citation omitted). "If the time, manner or scope of the investigation exceeds the proper parameters," a constitutionally permissible stop may be transformed into an impermissible stop. State v. Brown, 294 S.W.3d 553, 562 (Tenn. 2009) (quoting State v. Childs, 256 F.3d 559, 564 (7th Cir. 2001), vacated, 277 F.3d 947 (7th Cir. 2002)); State v. Troxell, 78 S.W.3d 866, 871 (Tenn.2002).

In the context of determining whether investigative methods run afoul of the Fourth Amendment and article 1, section 7, this court has stated that "requests for driver's licenses and vehicle registration documents, inquiries concerning travel plans and vehicle ownership, computer checks, and the issuance of citations are investigative methods or activities consistent with the lawful scope of any traffic stop." State v. Gonzalo Garcia, No. M2000-01760-CCA-R3-CD, Davidson County, slip op. at 22 (Tenn. Crim. App. Feb. 20, 2002) (citing United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000)), rev'd on other grounds, 123 S.W.3d 335 (Tenn. 2003). A law enforcement officer making a constitutionally permissible traffic stop must not prolong the stop for longer than necessary to process the traffic violation without having a reasonable suspicion of other criminal activity sufficient to warrant prolonging the stop. State v. Harris, 280 S.W.3d 832, 842 (Tenn. Crim. App. 2008) (citing State v. Walker, 12 S.W.3d 460, 464 (Tenn. 2000)).

As we have noted, the trial court reviewed the video recording of the stop. The agents testified about the recording, although it has not been transmitted as part of the appellate record. As the appellants, the Defendants were required to prepare a record that conveys a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). In the present case, we must presume that the video recording supported the trial court's ruling, and the Defendants are not entitled to relief. In this regard, nothing in the record refutes the trial court's findings that the weaving justified Agent Long's stopping the truck.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE