In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3111

United States of America,

Plaintiff-Appellee,

v.

Tommie T. Childs,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois, Peoria Division.
No. 00-CR-10004--Michael M. Mihm, Judge.

Argued February 12, 2001--Decided July 3, 2001

   Before Cudahy, Rovner and Williams, Circuit
Judges.

   Cudahy, Circuit Judge.   This is a direct
appeal of the criminal conviction of
Tommie Childs, who was charged in a one-
count indictment with possession of
cocaine with intent to distribute in
violation of 21 U.S.C. sec. 841(a)(1).
Following a jury trial, Childs was found
guilty and sentenced to 120 months
imprisonment followed by eight years of
supervised release. He now appeals the
district court's order denying his motion
to suppress.

I.

   Peoria police officer James Chiola first
encountered Childs when he responded to a
dispatch call regarding a confrontation
between two men over a hit and run
accident. He arrested Childs on an
outstanding arrest warrant; he also found
marijuana in Childs' pocket and charged
him with drug possession. At that time,
Chiola noticed that the car Childs was
driving had a broken windshield, and he
told him to get it repaired because he
thought it "materially impaired the
driver's view" in violation of 625 ILCS
5/12-503(e) of the Illinois Vehicle Code.
Three days later, Chiola spotted the same
car, with the windshield still broken,
and stopped the car for that reason. He

found Childs in the passenger seat and, while Chiola's partner questioned the driver about the cracked windshield, Chiola proceeded to Childs' side of the car. Chiola testified that Childs was visibly nervous: he would not look at him, he kept his head down when speaking and he spoke in a low tone of voice. Chiola asked Childs whether he had any marijuana in his possession and later asked if he could search him. Childs consented. As Childs stepped out of the car, he removed a cigarette pack from his pocket and placed it on the seat. As it lay there, the pack opened up, revealing a plastic bag with what appeared to be crack cocaine inside. Chiola arrested Childs for possession.

At trial, Childs argued that the contents of the cigarette pack should be suppressed. During the suppression hearing, he testified that Chiola had not instructed him to fix the windshield when he arrested him three days earlier, that no one spoke to the driver after the stop in question and that he did not leave the cigarette pack on the car seat when he stepped out of the car. The court ruled that the broken windshield provided a reasonable basis for the stop. The court further determined that Chiola's testimony that Childs removed the cigarette pack from his pocket was more credible than Childs' conflicting testimony. That ended the matter, because once Childs consented to the search, anything he removed from his pocket prior to the search was fair game.

II.

The sole issue presented for review is whether the district court erred in denying Childs' motion to suppress. When reviewing the denial of a motion to suppress, our standard of review for the district court's findings of fact is clear error. See United States v. Faison, 195 F.3d 890, 893 (7th Cir. 1999). Mixed questions of law and fact will be reviewed de novo. See Ornelas v. United States, 517 U.S. 690, 696-97 (1996); Faison, 195 F.3d at 893. If, in making factual determinations, the district court deems the testimony of one witness more credible than that of another witness and that testimony is supported by the record, there can be no clear error. See id.; United States v. Packer,

15 F.3d 654, 656-57 (7th Cir. 1994).

A.

Childs first challenges the denial of his motion to suppress on the grounds that Chiola had insufficient probable cause to stop the vehicle in the first place. We review a district court's probable cause determination de novo, while we defer to subsidiary findings of historical fact unless they are clearly erroneous. Ornelas, 517 U.S. at 699; United States v. Cashman, 216 F.3d 582, 586 (7th Cir. 2000). The government bears the burden of establishing that the officer had probable cause to stop the car. See United States v. Pavelski, 789 F.2d 485, 490 (7th Cir. 1986). "[S]o long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." Cashman, 216 F.3d at 586 (citing Whren v. United States, 517 U.S. 806 (1996)). Childs argues that the government failed to meet this burden, and that therefore the evidence seized as a result of the illegal stop should have been suppressed. If an initial stop and detention violate the Fourth Amendment, the evidence seized as a result of the stop is subject to suppression. See United States v. Gillepsie, 650 F.2d 127, 129 (7th Cir. 1981); United States v. Eylicio-Montoya, 70 F.3d 1158, 1163-65 (10th Cir. 1995); cf. United States v. Jerez, 108 F.3d 684, 695 (7th Cir. 1997). We must therefore determine whether the district court erred in concluding that Chiola had probable cause to stop the vehicle.

To support his contention, Childs first points to the district court's statements that the probable cause question was a close call. Judge Mihm's comments were in apparent reaction to the government's failure to produce much evidence in support of Chiola's probable cause determination. Thus, Chiola never sat in the driver's seat to discern whether the crack in the windshield actually obstructed the driver's view, nor did he photograph the damaged windshield. The evidence presented by the prosecution was indeed scanty, and the district court concluded that it was "not in a position to say that [the crack in the windshield] materially obstructed the driver's view." Of course, whether the driver is actually

in violation of a law is irrelevant to a probable cause determination "so long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." Cashman, 216 F.3d at 586. In Cashman, we described how this standard applies to cracked windshields:

For the purposes of probable cause analysis, we are not concerned with the precise length or position of the crack. The propriety of the traffic stop does not depend, in other words, on whether [the defendant] was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. The pertinent question instead is whether it was reasonable for [the police officer] to believe that the windshield was cracked to an impermissible degree.

Cashman, 216 F.3d at 587. Here, Chiola testified that he observed the windshield three days earlier and considered it to be in violation then, and he therefore felt justified in stopping the vehicle, which had the same crack as before. Childs denies that the windshield was cracked to an impermissible degree. He notes that, while Chiola testified that he told Childs to get the crack fixed three days earlier (which Childs disputes), Chiola issued no ticket or warning about the damage. Further, there was no independent proof establishing that the windshield was cracked to an impermissible extent. Nonetheless, the district court found Chiola to be a credible witness, and we see no reason to reject that finding. This is particularly so in light of Childs' testimony that Officer Chiola's first question to him after the stop was why did he not repair the window. Why would that be Chiola's first question, if he hadn't mentioned the cracked windshield to Childs three days before?

Childs notes that in a similar case photographic evidence revealing the size and location of the windshield crack was presented to support a finding that there was probable cause. See Cashman, 216 F.3d at 587. While photographic evidence would have been useful in this case, and without it Chiola's testimony is less

supportable, Childs has not induced in us a firm conviction that the district court made a mistake. Therefore, the district court's finding that the windshield crack was big enough for the officer to have had "probable cause that a traffic law had been violated," see United States v. Smith, 80 F.3d 215, 219 (7th Cir. 1996), stands.

B.

Childs next argues that, when Chiola questioned him about drugs, he exceeded the scope of the investigation in violation of the Fourth Amendment. Because traffic stops are considered seizures, they are governed by the principles articulated by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968). Thus, "[i]n addition to being justified at its inception . . . a traffic stop also must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" Valance v. Wisel, 110 F.3d 1269, 1276 (7th Cir. 1997) (quoting Terry, 392 U.S. at 20). A reasonable traffic stop can become unreasonable under the Fourth Amendment if the time, manner or scope of the investigation exceeds the proper parameters. See Valance, 110 F.3d at 1276 (citing United States v. Finke, 85 F.3d 1275, 1278-79 (7th Cir. 1996)). The government notes that Childs failed to raise this issue in the district court, and therefore has forfeited this argument on appeal. See United States v. Clarke, 227 F.3d 874, 881 (7th Cir. 2000). Thus, we review this argument for plain error. See id. Under this standard, we will only reverse if we find "'particularly egregious errors' for the purpose of preventing a miscarriage of justice." United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998) (quoting United States v. Whaley, 830 F.2d 1469, 1476 (7th Cir. 1987)).

Childs argues that, because the traffic stop was for the cracked windshield, and because the only other obvious violation was failure to fasten a seatbelt, questioning Childs about drug possession was outside the scope of the stop. A traffic stop must be reasonably related in scope to the circumstances that justified the initiation of the stop. See United States v. Green, 111 F.3d 515, 519 (7th Cir. 1997). Also, the detention must

last no longer than necessary to effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality) (White, J., concurring); Finke, 85 F.3d at 1279. It is undisputed that the stop was not prolonged for Chiola to question Childs; the questioning occurred while the other police officer was processing the driver of the vehicle. Thus, Childs does not challenge the length of the detention, but rather the scope of Chiola's investigation.

At the suppression hearing, Chiola explained his basis for questioning Childs about drugs, as well as the reasoning behind his request to search him. He said he took into account Childs' nervous demeanor, his failure to make eye contract and his low tone of voice, as well as the fact that he knew about Childs' prior drug violations--including one just three days earlier. We hold that these factors do not rise to the level of reasonable suspicion.

First, when a police officer questions someone during a routine traffic stop, inquiries falling outside the scope of the detention constitute unlawful seizure./1 This is because both the duration and the scope of a seizure (such as a traffic stop) must be restricted to that necessary to fulfill the seizure's purpose. Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality) (White, J., concurring); United States v. Robinson, 30 F.3d 774, 784 (7th Cir. 1994). Further, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id. In the Seventh Circuit, we have indicated that such an overreaching investigation includes questioning that falls outside the scope of the purpose for the seizure. In United States v. Rivera, 906 F.2d 319 (7th Cir. 1990), we found that questions outside the scope of investigating the traffic offenses were acceptable--but only because they were "brought on by the trooper's reasonable suspicions." Id. at 322. The only time questions may exceed the scope of the purpose of the detention is when the officer has reasonable suspicion regarding the issue on which he is questioning. Reasonable suspicion is "some objective manifestation that the

person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981). Reasonable suspicion must be "supported by articulable facts that criminal activity is afoot." United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000) (citing Terry, 392 U.S. at 30). The government bears the burden of establishing that there was reasonable suspicion. United States v. Longmire, 761 F.2d 411, 417 (7th Cir. 1985). We conclude that Chiola's observation of nervousness and knowledge of Childs' criminal history do not add up to reasonable suspicion, and thus the government failed to meet its burden. Although we defer to findings of historical fact and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers," we review de novo whether the officer had reasonable suspicion to detain Childs. Ornelas, 517 U.S. at 699. A prior criminal record by itself cannot produce reasonable suspicion. United States v. Jerez, 108 F.3d 684, 693 (7th Cir. 1997) (citing United States v. Davis, 94 F.3d 1465, 1469 (10th Cir. 1996); United States v. Santillanes, 848 F.2d 1103, 1108 (10th Cir. 1988)). But "[k]nowledge of . . . recent relevant criminal conduct, while of doubtful evidentiary value in view of the strictures against proving guilt by association or by a predisposition based on past criminal acts, is a permissible component of the articulable suspicion required for a Terry stop." United States v. Feliciano, 45 F.3d 1070, 1074 (7th Cir. 1995) (emphasis in original) (citations omitted)./2 Likewise, nervousness alone cannot give rise to reasonable suspicion. United States v. Brown, 188 F.3d 860, 865 (7th Cir. 1999). But, of course, even when each factor standing alone is insufficient, their combination can sometimes amount to reasonable suspicion. See United States v. Sokolow, 490 U.S. 1, 9 (1989). They do not do so here.

The reason is that these two factors alone tell us little about whether suspicion is reasonable. The defendant's criminal record (even, as here, of very recent vintage) is an aspect of his status, which is unalterable, whether he is committing a crime at the time his vehicle is stopped or not. Whether he

possessed drugs three days ago or one year ago, or never, cannot reasonably show that he possesses drugs today--not unless some other factor related to the defendant's circumstances today can buttress his criminal past. Similarly, nervousness is a natural reaction that a seasoned criminal might have every time he is confronted by a police officer-- particularly when it is the same police officer who arrested him three days before. It is true that a criminal record plus one or two other factors has been deemed in some cases sufficient for reasonable suspicion, but the second factor in those cases has often involved more tangible evidence, or at least evidence more related to whether the criminal is committing a crime at that particular moment. For example, we have found that status as a "dangerous" convicted felon plus the presence of a gun in view on the floor of the car could create reasonable suspicion. Valance, 110 F.3d at 1277. A criminal record, nervous behavior and implausible travel plans (rental car driver was headed to a wedding in New York, but car was due back in California in two days) have been deemed sufficient to establish reasonable suspicion. United States v. McRae, 81 F.3d 1528, 1535-36 (10th Cir. 1996).

As our reasoning in Valance demonstrates, reasonable suspicion findings are often easier to swallow when the safety of the officer is at stake. In that case, a "dangerous" felon possessed what appeared to be a gun in his car. In other cases, findings of reasonable suspicion based on criminal history in addition to marginal supplementary evidence appear to be grounded in the concern for the officers' safety, and the analysis more forgiving. For example, presence in a "high crime corridor" plus a rental car contract signed by a party not in the car plus a criminal record established reasonable suspicion, the Eleventh Circuit said--or at least reasonable safety concerns. United States v. Purcell, 236 F.3d 1274, 1280 (11th Cir. 2001). There were no safety concerns in the confrontation between Chiola and Childs, and the government did not try to articulate any.

Indeed, in a case in which there were numerous articulable factors establishing suspicion, we still qualified our finding

that reasonable suspicion existed sufficient to conduct a criminal record inquiry during a traffic stop: "Significant to our conclusion are the facts that the request took only five extra minutes and involved no additional questioning, no action on the part of the defendants, and no request or wait for a canine unit." Finke, 85 F.3d at 1280 (emphasis added). We made such a qualification despite the presence of more factors than we have in the case before us: 1) the status of the car as a rented vehicle; 2) recent travel plans; 3) fast food wrappers indicating a long trip without stopping; 4) nervousness of the driver; and 5) the appearance of the passenger as "feigning grogginess in an attempt to avoid answering questions." Id. Our reasoning in Finke implies that these factors may not have been enough to establish sufficient reasonable suspicion for further questioning. But we need not make such a determination, because the factors comprising reasonable suspicion in the case before us are much fewer and are less reliable indicators of present criminal activity than in Finke.

We therefore find that, during the routine traffic stop, Childs was asked questions well beyond the scope of an in vestigation related to the purpose of the stop.

C.

Childs' final argument, challenging the voluntariness of his consent, is of importance only because we have found that Chiola exceeded the scope of the stop when inquiring about drugs. The government asserts that Childs has also forfeited the consent argument on appeal, because he did not raise this argument before the district court. Indeed, he conceded consent (though not its voluntariness) in the district court. Therefore, we will review this conclusion of the district court for plain error. See Clarke, 227 F.3d at 881.

The question whether one's consent to search was voluntary must be determined in light of the "totality of the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Factors to be considered include:

the age, education, and intelligence of

the individual providing consent; whether he was advised of his rights; how long he was detained prior to giving consent; whether he immediately consented, or whether the police officers made repeated requests for consent; the existence or absence of physical coercion; and whether the individual was in custody.

Valance, 110 F.3d at 1278 (citing United States v. LaGrone, 43 F.3d 332, 334 (7th Cir. 1994); United States v. Kozinski, 16 F.3d 795, 810 (7th Cir. 1994)).

Even if the drug question was permissible, Childs argues that the consent was not knowing and voluntary because Chiola had indicated that he could conduct a search based on the seatbelt violation. The exchange between Childs and Chiola, as recounted in Childs' testimony, appears to imply that possibility:

I said, "What would you search me for?" He said, "Because you ain't got no seat belt on." I said, "No, you ain't going to find nothing on me." He said, "Are you sure of that?" I said, "Yeah. You can search me. That's when he asked me to get out of the car."

This exchange might raise questions because it may signal Childs' belief that the search could have been conducted without his consent, and this could undermine the knowing and voluntary nature of the consent. However--absent the prior improper questioning--the district court's finding that there was voluntary consent would not rise to the level of plain error, particularly considering the fact that Childs testified in the court below that he consented. We will reverse for plain error only in quite exceptional circumstances. Linwood, 142 F.3d at 422.

But that does not end our inquiry. When, as here, consent was obtained following illegal questioning, the inquiry into voluntariness becomes more searching:

[T]o determine whether the acquisition of evidence pursuant to consent is purged of the taint of an antecedent illegal seizure, we place a "heavy burden" on the government and look to "(1) the temporal proximity of the illegal detention [to the defendants' consent]; (2) the

presence of intervening factors between the two events; and (3) the circumstances surrounding, and the nature of, the official misconduct."

Jerez, 108 F.3d at 695 (quoting United States v. Sanchez-Jaramillo, 637 F.2d 1094, 1099 (7th Cir. 1980) (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975), cert. denied, 449 U.S. 862 (1980)). Here, the consent was obtained immediately following the Fourth Amendment violation, and there were no intervening events. Thus, we are left to determine whether, as a matter of plain error, the surrounding circumstances and the nature of Chiola's conduct were so egregious as to negate the apparent voluntariness of Childs' consent. This we cannot do because the district court did not consider whether Childs' consent was knowing and voluntary. Had the court found that Chiola's questioning amounted to an unlawful seizure, it might have examined more searchingly whether Childs' consent was in fact voluntary. Thus, we remand for consideration of this issue.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court as to probable cause; we REVERSE the district court's conclusion that Chiola's questioning did not violate Childs' Fourth Amendment rights; and we REMAND to the district court for consideration of the question whether Childs' consent was nonetheless voluntary.

FOOTNOTES

/1 So far as this court can determine, only the Fifth Circuit disagrees with this proposition. See United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993) ("[A] police officer's question- ing, even on a subject unrelated to the purpose of the stop, is [not] itself a Fourth Amendment violation.").

/2 We note that here we have not only criminal history, but very recent criminal history. None- theless, we decline to give this factor decisive weight in the reasonable suspicion analysis. Our precedent does not appear to demand making a distinction between recent and more remote histo- ry of criminal acts. While in Feliciano we indi- cated that knowledge of recent criminal conduct was "a permissible component of the articulable suspicion required for a Terry stop," 45 F.3d at

1074, we did not indicate that the recency of the activity should give a defendant's criminal past any greater weight. Of course, if the activity is so recent as to merge with the activity under scrutiny, a different analysis might be called for.