# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 26, 2011 Session

## STATE OF TENNESSEE v. STEVEN LARRY KILGORE, JR.

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 275365     Rebecca J. Stern, Judge**

---

**No. E2011-01113-CCA-R3-CD - Filed February 10, 2012**

---

The appellant, Steven Larry Kilgore, Jr., pled nolo contendere in the Hamilton County Criminal Court to misdemeanor theft of property and received a sentence of eleven months, twenty-nine days to be served on probation. As part of the plea agreement, the appellant reserved a certified question of law as to whether the police had reasonable suspicion to seize and detain him and whether the subsequent, non-consensual search of his car and seizure of evidence was illegal. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

W.B. Mitchell Carter, Jr., Chattanooga, Tennessee, for the appellant, Steven Larry Kilgore, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; William H. Cox, District Attorney General; and Brian Finlay, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In March 2010, the Hamilton County Grand Jury indicted the appellant for theft of property valued one thousand dollars or more but less than ten thousand dollars, a Class D felony. Subsequently, the appellant filed a motion to suppress, alleging that the police unreasonably detained him and conducted a warrantless search of his car without his consent.

At the suppression hearing, Deputy John Wigley of the Hamilton County Sheriff's Department testified that about 11:00 p.m. on August 28, 2009, he was on patrol and was advised by dispatch of a suspicious vehicle. Dispatch described the vehicle as a gold Toyota Camry with a single occupant and gave the location of the car as the intersection of Jewell Road and Stallion Lane off Highway 58. Deputy Wigley went to the intersection and saw the car parked in the roadway. He said the car was parked by a dumpster, was in the lane of travel, and was facing oncoming traffic. He stated that the car was stopped in an area that was "[n]ot a place to park" and that there had been a lot of car burglaries, house burglaries, and home invasions in the area. None of the car's lights were turned on. Deputy Wigley pulled in front of the car and shined his spotlight on it. He did not activate his patrol car's blue lights but got out of his car and approached the Camry's driver's side. He recognized the driver as the appellant and asked the appellant what he was doing. The appellant said he was waiting on a friend. Deputy Wigley said that he asked the appellant "who his friend was" but that the appellant "[c]ould not give [him] any of that information."

Deputy Wigley testified that he did not call for assistance but that two officers heard the dispatch over their police radios and arrived at the scene "roughly between five minutes or so." One of the officers, Deputy Larry Posey, was a K9 officer. At some point, Deputy Wigley searched the interior of the Camry and found a large amount of electronic equipment. A computer laptop turned out to be stolen.

On cross-examination, Deputy Wigley testified that he had "taken numerous reports" of break-ins in the area but that "I'm not sure of the timeline." He acknowledged that dispatch advised him the Camry had "some damage to it" and was "parked in a funny position on the road." He said he had been a jail officer previously and recognized the appellant on the night of August 28, 2009, as a former jail inmate. At first, he said he was "pretty sure" that the appellant did not tell him the name of the appellant's friend. However, he then stated that he did not recall whether the appellant gave him a name. Deputy Wigley acknowledged that he returned to his patrol car and ran a records check on the appellant. He said he used the appellant's driver's license or name and date of birth to run the check. Deputy Wigley returned to the Camry and got the appellant out of the car. He acknowledged that the other officers had arrived by that time. The defense asked, "Okay. But you had pulled him out of the car and were you still working on his license or was someone else still working on verifying his license at that time?" Deputy Wigley answered, "Yes." Sometime before or after Deputy Wigley got the appellant out of the Camry, the appellant's friend arrived at the scene.

Deputy Wigley testified that he frisked the appellant. The defense asked the officer if he had any "signs" the appellant was dangerous, and Deputy Wigley answered, "I only know him in a controlled environment, which would be the jail. Outside of the jail I couldn't

-2-

tell you if he was dangerous or not." Deputy Wigley acknowledged that he asked to search the Camry and that the appellant said no. He said that the appellant was very cooperative, and he acknowledged that the police dog arrived shortly after he got the appellant out of the Camry. He explained, "I was not waiting on a [police] dog. I was just conducting an investigation to figure out who he was, if [he] had active warrants. And I believe he's from Georgia so were waiting on Georgia to see if there were active warrants there or in Tennessee."

Deputy Larry Posey of the Hamilton County Sheriff's Department testified that he heard about the suspicious vehicle call and went to Deputy Wigley's location. He was two to three miles away, arrived five to ten minutes after Deputy Wigley, and was the third officer on the scene. Deputy Posey said he got out of his patrol car and "went up and just kind of stood by with Wigley just to see what was going on." Deputy Posey asked the appellant if he had ever been arrested, and the appellant said he had been arrested for manufacturing methamphetamine. Deputy Posey asked for consent to search the appellant's car, but the appellant refused. Deputy Posey said, "I then deployed my PSD, or my police service dog, did an exterior search of the vehicle." He said the dog "positively hit" on the car's rear passenger-side door, indicating an odor of narcotics in the vehicle. The appellant told the officers that some of his friends had smoked marijuana in the car earlier. The officers searched the car and found the stolen laptop.

On cross-examination, Deputy Posey testified that he had been a K9 officer for one year. He said his dog, Zoro, had never given a false alert and had an accuracy rate of one hundred percent.

In a written order, the trial court found that the appellant was seized when Deputy Wigley took his driver's license for investigation. However, the court determined that Deputy Wigley had reasonable suspicion for the seizure because the officer "had reason to suspect the defendant of driving on the left side of the road in violation of [Tennessee Code Annotated section 55-8-115] and parking on the left side of the road in violation of [Tennessee Code Annotated section 55-8-161]."[1] Moreover, the court found that the appellant's detention was not prolonged for the purpose of having the dog sniff the car because Deputy Posey "apparently arrived before Dep. Wigley completed or could have

---

[1]Tennessee Code Annotated section 55-8-115(a) provides that, absent certain exceptions, none of which applies in this case, "[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway." Tennessee Code Annotated section 55-8-161(a) provides that, generally, "every vehicle stopped or parked upon a roadway where there are adjacent curbs shall be so stopped or parked with the right-hand wheels of the vehicle parallel to and within eighteen inches (18") of the right-hand curb."

completed his investigation" and "apparently developed probable cause to search the car before Dep. Wigley completed or could have completed his investigation." The trial court denied the appellant's motion to suppress. Subsequently, the appellant pled guilty to misdemeanor theft, reserving a certified question of law as to whether the police had reasonable suspicion to seize and detain him and whether the subsequent, non-consensual search of his car and seizure of evidence was illegal.

## II. Analysis

Initially, we note that the State contends this court should dismiss the appeal because the appellant failed to properly reserve a certified question of law. Specifically, the State asserts that the certified question does not clearly identify the scope and limits of the legal issue presented. We disagree with the State.

Rule 37(b)(2)(A), Tennessee Rules of Criminal Procedure, provides that an appellant may appeal from any judgment of conviction occurring as a result of a plea of guilty or nolo contendere if the following requirements are met:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Regarding the second requirement, our supreme court has explained,

> [T]he question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the

-4-

> admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise.

State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). It is a defendant's burden to ensure that he has complied with the requisites of Rule 37(b). See id.

Turning to the instant case, the appellant reserved his certified question by including on the judgment of conviction a reference to an order which sets out the issue as follows: "Whether, under the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution, law enforcement lacked the reasonable suspicion necessary to seize and detain Mr. Kilgore, and whether the subsequent, non-consensual search and seizure of evidence in his vehicle was illegal and therefore inadmissible?" The question identifies the basis upon which the appellant argues that his seizure and the subsequent search of his vehicle were unlawful. Therefore, we conclude that the appellant properly reserved the certified question.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. Our supreme court has previously noted that, generally, "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (citation and quotation marks omitted). "However, neither the Fourth Amendment nor Article I, section 7 limit all contact between police and citizens." State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000).

The United States Supreme Court has long recognized that police officers may engage

-5-

citizens in encounters unrelated to the detection and investigation of criminal conduct. See Cady v. Dombrowski, 413 U.S. 433, 441 (1973). In doing so, officers operate in their so-called "community caretaking" capacity. Id. The constitutional protections against unreasonable searches and seizures "are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen." Daniel, 12 S.W.3d at 424. Our courts have thus articulated three categories of police-citizen interaction and their corresponding evidentiary requirements: "(1) full-scale arrest, which must be supported by probable cause; (2) brief investigatory detention, which must be supported by reasonable suspicion of criminal activity; and (3) brief police-citizen encounter that requires no objective justification." State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009) (citations omitted); see also State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006). The appellant asserts that the present case is more akin to a brief police-citizen encounter that turned into an improper seizure when the officer recognized the appellant as a former jail inmate.

"Generally, an officer may approach an individual in a public place and ask questions without implicating constitutional protections, so long as a reasonable person would feel free to disregard the police and go about his business." State v. Williams, 185 S.W.3d 311, 315 (Tenn. 2005) (quotation marks and brackets omitted). More particularly, our supreme court has held that "'[a] police officer may approach a car parked in a public place and ask for driver identification and proof of vehicle registration, without any reasonable suspicion of illegal activity.'" Id. (quoting State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993)). The community caretaking interaction becomes a seizure, however, "'when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" Id. at 316 (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). As the United States Supreme Court has articulated it, "a seizure occurs 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). A seizure without a warrant is presumed unreasonable, and evidence derived therefrom subject to suppression, under both the federal and state constitutions "unless the State demonstrates that the seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Nicholson, 188 S.W.3d at 656.

Irrespective of whether the appellant's interaction with Deputy Wigley started out as a brief police-citizen encounter, the trial court found that the appellant was seized when Deputy Wigley took possession of his driver's license for the records check. We agree with the trial court. As our supreme court has stated, "[W]hen an officer retains a person's identification for the purpose of running a computer check for outstanding warrants, no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification." Daniel, 12 S.W.3d at 427. Therefore, we

-6-

must next determine whether Deputy Wigley had reasonable suspicion to justify the seizure.

The trial court found that the appellant's traffic law violations provided reasonable suspicion for the appellant's seizure. Again, we agree with the trial court. The appellant does not dispute that he was parked in the roadway at night with his lights turned off and was facing oncoming traffic but argues that his traffic violations did not provide reasonable suspicion because nothing indicates Deputy Wigley intended to write him a traffic citation. However, if an officer has probable cause to believe that a traffic violation has occurred, the seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in conducting the stop. Whren v. United States, 517 U.S. 806, 813 (1996); State v. Vineyard, 958 S.W.2d 730, 734-35 (Tenn. 1997). Therefore, regardless of whether the officer planned to write the appellant a citation, the officer had reasonable suspicion to seize the appellant.

Next, the appellant contends that even if his seizure was proper, Deputy Wigley improperly prolonged the detention by unlawfully frisking him and waiting on the drug dog to arrive, which ultimately resulted in the discovery of the stolen laptop. During an investigatory traffic stop, an officer's actions must reasonably relate to the circumstances prompting the stop. State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002). Additionally, the detention must not last longer than needed to effectuate the reason underlying the stop, with the officer "'diligently pursu[ing] a means of investigation that [is] likely to confirm or dispel their suspicions quickly.'" Id. (quoting State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998)). "The proper inquiry is whether, during the detention, the officer diligently pursued a means of investigation that was likely to confirm or dispel suspicion quickly." State v. Brown, 294 S.W.3d 553, 562 (Tenn. 2009). A constitutionally permissible traffic stop may become unreasonable if the "'time, manner or scope of the investigation exceeds the proper parameters.'" Troxell, 78 S.W.3d at 871 (quoting United States v. Childs, 256 F.3d 559, 564 (7th Cir. 2001)).

The trial court found that Deputy Wigley's investigation was ongoing when the dog alerted to the smell of narcotics. Our careful review of the suppression hearing testimony reveals that Deputy Wigley questioned the appellant, began a records check of his driver's license, got him out of the Camry, and frisked him. Meanwhile, Deputy Posey arrived at the scene. On cross-examination, Deputy Wigley testified that the other officers were present when he got the appellant out of the car and frisked the appellant, and he acknowledged that he was still working on verifying the appellant's license at that time. Specifically, Deputy Wigley said that he was "just conducting an investigation to figure out who he was, if he had active warrants. And I believe he's from Georgia, so were waiting on Georgia to see if there were active warrants there or in Tennessee." Deputy Wigley also acknowledged that shortly after he got the appellant out of the car and frisked him, the drug dog arrived. Deputy Posey walked the dog around the car, and the dog alerted to narcotics.

We note that neither party specifically asked Deputy Wigley if he was still waiting on the appellant's records check when Deputy Posey walked the dog around the car. Nevertheless, given Deputy Wigley's testimony that he was waiting on the information at the time of the frisk and that the dog arrived shortly after the frisk, we cannot say that the frisk prolonged the appellant's detention or that the evidence preponderates against the trial court's finding that Deputy Wigley's investigation was ongoing when the dog alerted to the car. Therefore, the dog sniff occurred during the time reasonably necessary for the officer to complete the stop. See Illinois v. Caballes, 543 U.S. 405, 408 (stating that evidence must be suppressed if the dog sniff was conducted while defendant was unlawfully detained); State v. England, 19 S.W.3d 762, 766-68 (Tenn. 2000) (providing that canine sweeps are not a "search" under the Fourth Amendment and are reasonable if performed during the time necessary to effectuate the traffic stop). The dog's alert gave the officers probable cause to search the appellant's car, and we conclude that the trial court properly denied the appellant's motion to suppress.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE