IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2015 Session

## STATE OF TENNESSEE v. ORLANDO E. BOURRAGE

**Appeal from the Circuit Court for Williamson County**
**No. II-CR096708      Timothy L. Easter, Judge[1]**

---

**No. M2014-01194-CCA-R3-CD – Filed May 26, 2015**

---

Appellant, Orlando E. Bourrage, pleaded guilty to simple possession of marijuana and was sentenced to eleven months, twenty-nine days, suspended to probation. In pleading guilty, he reserved a certified question of law challenging the trial court's denial of his motion to suppress evidence seized as a result of an allegedly illegal detention. On appeal, he argues that the arresting officer unreasonably prolonged the initial traffic stop and that the trial court erred by denying his request for judicial diversion. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Doug Thurman (on appeal), Jim Todd (on appeal), and Edward Stephen Ryan (at plea hearing), Nashville, Tennessee, for the appellant, Orlando E. Bourrage.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Kim R. Helper, District Attorney General; and Carlin Charles Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case began as a traffic stop on Interstate 65 in Williamson County and resulted in appellant's being charged with driving under the influence, driving under the

---

[1] Judge James G. Martin III presided over the suppression hearing.

influence/child endangerment, and simple possession of marijuana. Appellant moved to suppress the evidence seized on the basis that the detention was unreasonable in duration. The trial court ruled in favor of the State. Subsequently, appellant pleaded guilty to simple possession of marijuana, a Class A misdemeanor, and the other two counts were dismissed. As part of his plea, he reserved a certified question of law. Appellant requested judicial diversion, but the trial court denied his request and sentenced him to eleven months, twenty-nine days, suspended to probation.

## A. Motion to Suppress Hearing

At the suppression hearing, Williamson[2] County Sheriff's Deputy David Borden testified that he was patrolling on Interstate 65 on May 28, 2012, when a Chevrolet Impala passed him on the left. He followed the vehicle and observed that it did not have a license plate. He continued following the vehicle through a construction zone and noticed that the vehicle crossed over the lane divider lines "a couple of times." Deputy Borden initiated a traffic stop after the vehicle left the construction area. He testified that the "main reason" he stopped the vehicle was because of the missing license plate. Deputy Borden said that when he approached the vehicle, he realized that a license plate was on the vehicle but had been folded down. He stated that he moved the license plate to its proper position. Deputy Borden then approached the driver, appellant. Deputy Borden testified that appellant "had some slurred speech, some bloodshot watery eyes[, and he] was having some real difficulty trying to find his paperwork." Deputy Borden said that he obtained appellant's Mississippi driver's license, returned to his patrol car, and processed the license through the National Crime Information Center ("NCIC"). He learned that the license was valid, and he returned to appellant's car. He testified that he had considered asking appellant to perform field sobriety tasks, and when asked whether anything made him "more sure [about the tasks] when [he] approached the vehicle again," he stated, "The second time I could smell what appeared to be unburnt marijuana coming from the vehicle." Deputy Borden further testified that he had encountered unburnt marijuana more than fifty times in his career. Deputy Borden said that he asked for appellant's consent to search the vehicle. He agreed that obtaining consent generally "help[s] to alleviate any potential conflict." Deputy Borden testified that appellant consented to the search and that he had both appellant and appellant's twelve-year-old son exit the vehicle. Deputy Borden searched the vehicle and found two packs of cigarillos "placed behind the glove box[,] in a crack behind it." He said that some of the cigarillos were "wrapped up with some marijuana." Deputy Borden asked appellant whether the marijuana was his, and he admitted that it was. Deputy Borden testified that he found $3,907 in appellant's trunk but found nothing else in the vehicle.

---

[2] At the hearing, Deputy Borden was erroneously introduced as a deputy of the Lewis County Sheriff's Department.

On cross-examination, Deputy Borden testified that during the five-minute period that he followed appellant, he saw appellant touch or cross the center line twice. He agreed that the movement was not "pronounced or exaggerated." Deputy Borden said that he noticed the absence of a license plate before he "noticed the failure to maintain a lane." He further said that failure to maintain a lane indicated to him that the driver was possibly impaired. Deputy Borden testified that he was able to understand appellant "some of the time" but that he could not recall the exact words he was unable to understand. Deputy Borden agreed that he did not smell alcohol at any point in his encounter with appellant and that he did not smell unburnt marijuana when he first approached the vehicle. Deputy Borden also agreed that the second time he talked to appellant, he asked whether appellant had anything illegal in his vehicle, and he explained that he asked the question because he had smelled marijuana. Deputy Borden testified that he asked for appellant's consent to search the vehicle without telling him that he had smelled marijuana or that he had probable cause to search. Deputy Borden said that appellant originally denied consent to search but that he gave his consent after Deputy Borden told him that he would just take a "quick look." Deputy Borden explained that in the process of searching the vehicle, he did not find the marijuana immediately and stopped searching so that he could ask appellant where the marijuana was located. He agreed that he also told appellant that he would ask for a dog to come search appellant's vehicle. Appellant's counsel played the video in court of the traffic stop from time marker 1:50:36 to 2:03:16. Deputy Borden agreed that there was no exaggerated weaving shown in the video. He further agreed that he stopped appellant's vehicle at 1:55:38 and walked back to his patrol car after speaking with appellant at 2:03:11. On re-direct examination, Deputy Borden said that during half of his initial conversation with appellant, appellant was "fooling around with paperwork in the car." Having reviewed the video, we note that during this initial conversation, Deputy Borden and appellant discussed appellant's reason for traveling, whether a particular football team had won its game, and the fact that appellant could not find his registration.

Because neither party explicitly provided an exact timeline through Deputy Borden's testimony, we include the following table to illustrate the timing of events shown in the traffic stop video through Deputy Borden's finding the marijuana:

| Event | Time on Video | Time Elapsed from First Event |
|---|---|---|
| Blue lights activated | 1:55:35 | |
| First approach of appellant's car | 1:57:29 | 1 minute, 54 seconds |
| Discussion about purpose of stop, request for driver's license and paperwork, appellant's search for | 1:57:40 | 2 minutes, 5 seconds |

-3-

| | | |
|---|---|---|
| registration | | |
| Deputy returns to patrol car | 2:03:11 | 7 minutes, 36 seconds |
| Second approach of appellant's car | 2:09:45 | 14 minutes, 10 seconds |
| Deputy asks for consent to search car | 2:10:23 | 14 minutes, 38 seconds |
| Search begins | 2:11:49 | 16 minutes, 14 seconds |
| Deputy pauses search to ask appellant where his marijuana is; appellant attempts to explain why the deputy has smelled marijuana | 2:16:15 | 20 minutes, 26 seconds |
| Deputy resumes search and finds marijuana within the following three minutes | 2:23:05 | 27 minutes, 30 seconds |

The trial court took the matter under advisement and later issued a detailed ruling denying appellant's motion to suppress. In its order, the trial court stated that after reviewing the video of the traffic stop, it concluded that the only legitimate basis for the stop was the absence of the license plate. The trial court questioned the credibility of Deputy Borden because the deputy gave differing accounts of appellant's driving prior to the stop; however, the trial court explicitly found that Deputy Borden was credible when he testified that he smelled green, unburnt marijuana upon his second approach of appellant's vehicle. The trial court stated, "The odor of green, unburnt marijuana, however, gave Deputy Borden reasonable suspicion, based upon specific and articulable facts, that [appellant] had committed, or was committing, criminal activity[,] which authorized the detention of [appellant], the prolongation of the stop, and the search of [appellant's] vehicle."

### C. Plea Hearing and Judicial Diversion Hearing

At the plea hearing, appellant pleaded guilty to simple possession of marijuana, reserving the following certified question of law:

Whether the initial seizure of the defendant for improper display of the vehicle's license plate, which is not contested, became unreasonable where the detention became longer than necessary to effectuate the purpose of the stop thereby making the subsequent search of the [d]efendant's vehicle illegal and in violation of the Fourth Amendment to the Constitution of the United States and/or section 7, Article I of the Constitution of the State of Tennessee.

The State dismissed his other two charges.  For the factual basis, the State relied on the affidavit of complaint, which is not included in the appellate record.  After pleading guilty, appellant requested judicial diversion.  He submitted a certificate of eligibility for diversion from the Tennessee Bureau of Investigation and testified on his own behalf.

Appellant testified that he was thirty-nine years old at the time of the hearing.  He lived in De Kalb, Mississippi, and worked as a service representative for the Social Security Administration.  He had never before been arrested or convicted of any crime.  Appellant agreed that if he were placed on probation he would be able to follow the rules, take random drug screens, maintain his employment, and pay fines, fees, and costs.

On cross-examination, appellant agreed that he lied to Deputy Borden when the deputy asked whether he had anything illegal in his vehicle.  He said that he did not think Deputy Borden would find it and that it was a small amount.  He said that he estimated that there were seven grams of marijuana in the miniature cigars and that he had purchased the marijuana from his sister's boyfriend while visiting family in Cincinnati, Ohio.  He said that he smoked marijuana with his family that weekend but that his twelve-year-old son, who was with him when Deputy Borden stopped him, did not know that he smoked marijuana.  Appellant testified that he smoked marijuana once or twice per week, depending on his level of stress from work.  He said that the last time that he had smoked marijuana was April 27 because his hearing was in thirty days.  He believed that he would pass a drug test on the day of the hearing.

Upon questioning by the trial court, appellant agreed that he would be able to refrain from smoking marijuana for a year if it were required of him.  He agreed that he knew it was against the law to possess marijuana in Mississippi but said that possession was allowed for pharmaceutical purposes.  However, he did not have any medical issues requiring him to use marijuana.  Subsequently, the court ordered that appellant be immediately screened for drugs, and the test showed that appellant was positive for marijuana.

The trial court denied appellant's request for judicial diversion after making the following findings:

> There are several factors which a [s]entencing [c]ourt is to keep in mind when considering the question of an expungeable or [d]iverted sentence, beginning with the Defendant's amenability to correction.  Based upon his failure of the drug screen today and what I believe is a fudging of the truth with the Court today on his last use of marijuana[,] I find then that his amenability to correction is lacking.  And that weighs as a negative factor for [j]udicial [d]iversion.

Another factor the Court is to consider is the circumstances of the offense. And based upon the information that the State produced both during its statement of facts in this case as well as the cross[-]examination of the Defendant while he was testifying, I'm satisfied that the circumstances of this case particularly involving a minor who was in a very dangerous situation placed there by his father which is troubling and his lack of candor with law enforcement causes the circumstances of this offense to become a weight against [d]iversion.

Certainly his criminal record is a positive factor for [d]iversion. He has no prior record. His social history, I know very little about other than he enjoys smoking marijuana with his family and seems to – belittles the fact that it is against the law. Social history therefore would weigh against granting him diversion.

He does have employment, seems to have been gainfully employed for a number of years. That would weigh in favor of diversion. His physical and mental health, other than the fact that he apparently abuses marijuana, appear to be factors that would be neutral.

The deterrence value to the accused as well as others[,] I find would weigh against the granting of diversion in this case because someone who comes into Court with an illegal substance in their system, the same substance for which they have been convicted needs to understand that would send a horrible message to the rest of the community that you can conduct yourself in that kind of way and not be held accountable for that. So, the deterrence value – and need to be held accountable for it in a meaningful way – and giving diversion would not be in [a] meaningful way.

So, the deterrence value speaks for a denial of [d]iversion and the Court specifically finds that the interest of [j]ustice in this case would not be well[-]served if the Court granted [d]iversion. So, the Defendant's request for [j]udicial [d]iversion is denied.

Subsequently, the trial court sentenced appellant to eleven months, twenty-nine days, suspended to supervised probation. Appellant now appeals his conviction, via the certified question of law reserved in his plea, and the denial of judicial diversion.

## II. Analysis

### A. Certified Question

As part of his plea agreement, appellant reserved the following certified question of law:

> Whether the initial seizure of the defendant for improper display of the vehicle's license plate, which is not contested, became unreasonable where the detention became longer than necessary to effectuate the purpose of the stop thereby making the subsequent search of the [d]efendant's vehicle illegal and in violation of the Fourth Amendment to the Constitution of the United States and/or section 7, Article I of the Constitution of the State of Tennessee.

We note that the State on appeal has conceded that appellant presented a properly certified question.

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, a defendant must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure and *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). Having concluded that the certified question in this matter meets these requirements, we now address the question of whether the prolonged detention of appellant violated appellant's constitutional rights.

### B. Suppression of the Evidence

On appeal, appellant contends that his initial, valid detention became unreasonably prolonged by Deputy Borden when the deputy did not either write him a citation or send him on his way when the only reason for stopping his vehicle was an improperly displayed license plate. The State responds that the length of the detention was reasonable and that the deputy had probable cause to search appellant's vehicle.

In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise. *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). In reviewing the findings of fact, evidence presented at trial

-7-

may "'be considered by an appellate court in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

Traffic stops constitute seizures, entitling a vehicle's occupants to the full protections of the United States and Tennessee Constitutions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). Thus, law enforcement must act reasonably when initiating a traffic stop. *Whren*, 517 U.S. at 809-810. In other words, authorities must have at least an "articulable and reasonable suspicion" to believe that a traffic violation has occurred when they initiate a traffic stop. *Brotherton*, 323 S.W.3d at 870 (quoting *Whren*, 517 U.S. at 810). "Reasonable suspicion exists when 'specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "An investigatory traffic stop under *Terry* 'is a far more minimal intrusion [than an arrest pursuant to probable cause], simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000)).

Our supreme court has explained that reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity." *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Applying the "reasonable suspicion" standard, our supreme court has held that it is constitutionally permissible to stop a vehicle for an equipment violation in Tennessee. *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000) (approving this court's holding that a violation of the license plate light law, Tennessee Code Annotated section 55-9-404, created a reasonable suspicion to warrant a traffic stop). Once stopped, if an officer has probable cause to believe that a vehicle contains contraband, the officer is authorized to search the vehicle without a warrant under the "vehicle exception" to the warrant requirement. *State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009) (citing *Carroll v. United States*, 267 U.S. 132, 149 (1925)).

The record on appeal indicates that Deputy Borden executed a traffic stop of appellant's vehicle due to an equipment violation. The traffic stop, in and of itself, was constitutional, as appellant concedes. However, appellant maintains that Deputy Borden should have either written him a citation or let him go after realizing that his license plate was actually on the car, just not in its proper position. When Deputy Borden instead

prolonged the detention, appellant argues that the detention became unreasonable and that the subsequent search was therefore illegal.

"'[A] reasonable traffic stop can become unreasonable and constitutionally invalid 'if the time, manner or scope of the investigation exceeds the proper parameters.'" *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002) (quoting *United States v. Childs*, 256 F.3d 559, 564 (7th Cir. 2001)). In this case, Deputy Borden realized that the license plate was actually on the vehicle upon his initial approach. He explained to appellant why he had stopped him and asked for appellant's license, insurance, and registration. While appellant was looking for his registration paperwork, they conversed about the purpose of appellant's traveling, the fact that he could not find his registration, and football. Deputy Borden asked appellant whether he had anything illegal in the car, to which appellant responded in the negative. This conversation lasted several minutes, and we note that appellant's inability to find his registration and his incessant talking significantly impacted the length of time this stage of the encounter lasted. When appellant could not find his registration, Deputy Borden returned to his patrol car to process appellant's out-of-state driver's license through NCIC. The encounter thus far had lasted approximately six minutes. It took just under eight additional minutes for Deputy Borden to process the license. He then returned to appellant's vehicle. We conclude that there was nothing unreasonable about the detention from the time Deputy Borden initiated the stop until he returned to the vehicle. "'[R]equests for driver's licenses and vehicle registration documents, inquiries concerning travel plans and vehicle ownership, computer checks, and the issuance of citations are investigative methods or activities consistent with the lawful scope of any traffic stop.'" *State v. Harris*, 280 S.W.3d 832, 840 (Tenn. Crim. App. 2008) (quoting *State v. Gonzalo Garcia*, No. M2000-01760-CCA-R3-CD, 2002 WL 242358, at *21 (Tenn. Crim. App. Feb. 20, 2002), *overruled on other grounds by State v. Garcia*, 123 S.W.3d 335 (Tenn. 2003)). Therefore, Deputy Borden's actions were within the scope of the traffic stop when he initially approached the vehicle and while he processed appellant's license.

We now examine the traffic stop from the time that Deputy Borden returned to appellant's vehicle. At this point, Deputy Borden claimed that he smelled unburnt marijuana in appellant's vehicle. The trial court explicitly credited Deputy Borden's testimony on this claim, despite reservations about the deputy's credibility in general. Having reviewed the video and the testimony in this case, we cannot conclude that the evidence preponderates against the trial court's credibility finding. Thus, when Deputy Borden smelled the unburnt marijuana, he had "probable cause to believe that a crime other than the traffic violation had been committed" and could search the vehicle under the vehicle exception to the warrant requirement. *Saine*, 297 S.W.3d at 207. Thus, we

conclude that the detention of appellant was reasonable and that the search of his vehicle was proper.[3] He is without relief as to this issue.

## C. Judicial Diversion

In this case, appellant requested and was denied judicial diversion. On appeal, he contends that the factors in favor of judicial diversion outweighed the factors against the granting of judicial diversion. The State responds that the trial court did not abuse its discretion in denying appellant's request for judicial diversion.

"Judicial diversion is a form of 'legislative largess' available to qualified defendants who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt." *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (citations and footnote omitted). Eligibility does not "constitute entitlement," however, and the trial court is vested with the discretion to grant or deny judicial diversion. *Id.* In making its decision, the trial court must consider several common law factors:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice — the interests of the public as well as the accused.

*Id.* at 326 (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. 1996)). "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id.* (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1999)).

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial

---

[3] Both the United States and Tennessee Supreme Courts issued opinions after the oral arguments in the case sub judice that consider whether law enforcement officers unreasonably prolonged traffic stops. In *State v. Mechelle Montgomery*, the Tennessee Supreme Court ruled that under the circumstances of that case, a police officer did not unreasonably prolong a detention while waiting for a second officer to arrive. *Montgomery*, No. M2013-01149-SC-R11-CD, 2015 WL 1408914, at *4-5 (Tenn. March 27, 2015). The United States Supreme Court, on the other hand, ruled that officers cannot prolong a detention for the purpose of allowing a K-9 to sniff a vehicle for drugs when the officers do not have any reasonable suspicion of criminal activity and when the officers have already completed investigation of the traffic violation warranting the stop. *Rodriquez v. United States*, 575 U.S. ---, 135 S.Ct 1609, 1614-17 (2015). Both cases are factually distinguishable from this case, and their holdings do not affect the decision of this court that the length of the traffic stop was reasonable.

diversion," then this court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. Our supreme court has stated:

> Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id.* Failure to consider the common law factors results in loss of the presumption of reasonableness, and this court is required to conduct a de novo review or remand to the trial court for reconsideration. *Id.* at 327-28.

In this case, the trial court clearly considered the common law factors, weighed the factors, and placed its ruling on the record. Thus, we review its decision for abuse of discretion and afford the decision a presumption of reasonableness. We will affirm the trial court's decision if there is any substantial evidence to support it. Appellant contends that the trial court erred in its weighing of the relevant factors. However, the record shows that there was substantial evidence to support the findings of the trial court in that appellant lied to Deputy Borden, tested positive for marijuana at the judicial diversion hearing, admitted to smoking marijuana frequently, and had his son with him during the stop. Because the trial court did not abuse its discretion in its consideration of the factors, we leave the weighing of those factors to its sound discretion. Therefore, we affirm the trial court's denial of judicial diversion.[4]

## CONCLUSION

Based on the arguments of the parties, their briefs, the record, and the applicable law, we affirm the judgment of the trial court.

_____

ROGER A. PAGE, JUDGE

---

[4] We note that had we ordered the imposition of judicial diversion, appellant's certified question would have been preempted by *State v. Norris*, 47 S.W.3d 457 (Tenn. Crim. App. 2000) (concluding that a defendant on probation through judicial diversion cannot appeal as of right through a certified question).